1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

9

**SOUTHERN DISTRICT OF CALIFORNIA**

10

UNDERGROUND ELEPHANT, INC.,

11

12                                     Plaintiff,

v.

13

INSURANCE ZEBRA, INC., d/b/a THE ZEBRA,

14

15                                     Defendant.

CASE NO. 16CV2215-GPC(NLS)

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**

**[Dkt. No. 8.]**

16
17

        Before the Court is Defendant Insurance Zebra, Inc.'s motion to dismiss pursuant

18

to the doctrine of forum non conveniens.  (Dkt. No. 8.)  Plaintiff filed an opposition,

19

and Defendant replied.  (Dkt. Nos. 15, 16.)  Based on the reasoning below, the Court

20

GRANTS Defendant's motion to dismiss.

21

**Background**

22

        On September 1, 2016, Plaintiff Underground Elephant, Inc. ("UE") filed a

23

complaint for breach of contract, breach of the covenant of good faith and fair dealing,

24

fraud, negligent misrepresentation, violation of California Business & Professions

25

Code 17200 *et seq*., misappropriation of trade secrets, and declaratory relief against

26

Defendant Insurance Zebra, Inc. ("Zebra") for breach of an Insertion Order Agreement

27
28

("Agreement") between the parties executed on December 14, 2015.[1]  (Dkt. No. 1, Compl.)

UE is a "global performance-based marketing technology company that focuses on improving its clients' online customer acquisition programs through sophisticated mathematics and proprietary optimization."  (Id. ¶ 6.)  UE uses proprietary internal properties that target and identify consumers specifically interested in each client's service and sends those customers directly to UE clients.  (Id.)  UE's proprietary "Marketing Delivery Platform" enables it to customize each interaction to produce results that clients need to increase their return on investment on customer acquisition campaigns.  (Id.)  UE's proprietary information, technology, and services are trade secrets of UE.  (Id. ¶ 8.)  To maximize its revenues and use of the leads it collects, UE will sometimes purchase leads from trusted third parties such as Defedant Zebra.  (Id. ¶ 9.)

On October 4, 2013, UE and Zebra entered into a Marketing Agreement where Zebra paid UE for leads.  (Id.)  The complaint alleges that pursuant to industry standards, the Marketing Agreement provided that invalid leads include leads that are incentivized.  (Id.)  "An incentivized lead is a lead generated from a contest or sweepstakes. For example, Publisher's Clearing House ("PCH") is a well-known contest used to generate invalid leads.  A consumer will see an ad for PCH asking the customer to 'click here' or 'Enter Now!' to enter a contest to win $7,000 per week for life."  (Id.)  Therefore, incentivized leads are rarely, if ever, converted into sales and are considered fraudulent or invalid leads because the consumer is not interested in the product being sold but only seeks to enter the contest.  (Id.)

In May 2015, UE and Zebra began discussing the possibility of Zebra placing

---

[1] The Complaint does not specify the name of the Agreement but references the contract as an "Agreement."  (Dkt. No. 1, Compl. ¶ 10.)  Defendant references the Agreement as the Insertion Order Agreement which is attached as Exhibit A to the Declaration of Meghan Paulk Ingle.  (Dkt. No. 8-3, Ingle Decl., Ex. A (under seal).)  Plaintiff does not dispute that the Insertion Order Agreement is the contract at issue in the Complaint.

ads and selling leads to UE.  (Id. ¶ 10.)  During the discussions, Zebra's Chief Operating Officer, Joshua Dziabiak, told UE that it does not used incentivized ads to gather leads.  (Id.)  Based on the representation, UE entered into an agreement ("Agreement") with Zebra whereby UE agreed to purchase leads from Zebra at a price of $6.25- $8.00 per lead.  (Id.)  Since 2015, UE has paid Zebra about $2.3 million and Zebra claims UE owes it an additional $575,699 for the months of April-July 2016.  (Id. ¶ 11.)

In March 2016, Jessie McDowell, an account manager for UE, resigned after having been employed by UE for three years.  (Id. ¶ 12.) When she originally applied to work for UE, she signed a confidentiality agreement. (Id.) Then when she was hired she signed an Employee Confidential Information and Invention Assignment Agreement where she agreed to keep "in strictest confident" all UE confidential information.  (Id. ¶ 13.)  When she resigned, she signed a Separation Agreement and acknowledged she had received UE confidential information including trade secret information and promised not to use or disclose that information to third parties.  (Id. ¶ 14.)  After resigning from UE, McDowell went to work for Zebra and Plaintiff believes she disclosed UE trade secret information to Zebra and it is using the trade secret for its own benefit.  (Id. ¶  15.)

After entering into the agreement, UE received several complaints from its clients that the leads UE provided to them that originated from Zebra were incentivized.  (Id. ¶ 16.)  When UE confronted Zebra by email, the response from Dziabiak was that it does not used incentivized ads to drive traffic.  (Id. ¶¶ 16, 17.)  UE then investigated the source of Zebra's leads using third party reports and discovered that 68% of the leads generated by Zebra were incentivized.  (Id. ¶ 18.)  In addition to the money it paid Zebra, UEs goodwill and reputation has been damaged because UE has provided the fraudulent leads sold by Zebra to UE's clients.  (Id. ¶ 19.)  UE promptly reported its findings to Zebra and demanded a refund of $2.3 million it already paid and demanded a cancellation of the remaining amounts Zebra claims it

owes. (Id. ¶ 20.) Plaintiff alleges that the incentivized leads were fraudulent and failed to comply with the terms of the parties' agreement or industry standards. (Id. ¶ 1.) On August 30, 2016, Zebra demanded payment from UE for the remaining amounts due. (Id. ¶ 20.)

On September 1, 2016, UE filed a complaint in this Court alleging breach of contract and related causes of action seeking the amounts it paid to Zebra and cancellation of the remaining amounts Zebra alleges it owes.   (Dkt. No. 1, Compl.)

Then on September 15, 2016, Zebra filed a complaint against UE in the District Court for the Western District of Texas, Case No. 1:16cv1065-SS ("the Texas Action") for breach of contract of the Insertion Order Agreement and related causes of action. (Id., Dkt. No. 1.) On October 6, 2016, UE filed a motion to strike certain provision in the complaint. (Id., Dkt. No. 9.) On October 19, 2016, the district court granted UE's motion to strike.[2]   (Dkt. No. 17.)   On October 28, 2016, UE filed an answer and counterclaim against Zebra.   (Id., Dkt. No. 18.)   The counterclaim mirrors the complaint in this case.   (Id.)

**A.     Legal Standard on Forum Non Conveniens**

Defendant moves to dismiss the complaint pursuant to the doctrine of forum non convenience because the parties' 2015 Agreement contains a valid and enforceable forum-selection clause which requires the parties to adjudicate the dispute in Travis County, Texas.   Plaintiff opposes contending that the forum selection clause only applies to the breach of contract and breach of the covenant of good faith and fair dealing and not the remainder of the claims.   Moreover, even if the forum selection clause applies, Plaintiff claims that the private and public factors weigh in its favor.

Forum selection clauses are analyzed under 28 U.S.C. § 1404(a).   See Atlantic Marine Const. Co., Inc. v. U.S. Dist. Court for the W. Dist. of Texas, 134 S. Ct. 568,

---

[2]In its order granting UE's motion to strike, the district judge noted that the case appears to be a simple breach of contract case existing in two forums and stated, "[t]he Court fully expects the Southern District of California to take advantage of this pending case and wash its hands of the California litigation."   (Case No. 1:16cv1065-SS, Dkt. No. 17 at 1 n.1.)

[16CV2215-GPC(NLS)]

580-81 (2013). "In the typical case not involving a forum-selection clause, a district court considering a § 1404(a) motion (or a forum non conveniens motion) must evaluate both the convenience of the parties and various public-interest considerations." <u>Id.</u> at 581. "The calculus changes, however, when the parties' contract contains a valid forum-selection clause, which 'represents the parties' agreement as to the most proper forum.'" <u>Id.</u> (citation omitted). "When the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause. Only under extraordinary circumstances unrelated to the convenience of the parties should a § 1404(a) motion be denied." <u>Id.</u> ("a valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases.").

In <u>Atlantic Marine</u>, the United States Supreme Court explained that the existence of a valid forum selection clauses alters the typical § 1404(a) analysis in three way. First, although there is a general presumption in favor of plaintiff's choice of forum, when there is a valid forum selection clause, there is no longer a presumption in favor of the plaintiff's choice of forum and in fact, "the plaintiff's choice of forum merits no weight." <u>Id.</u> at 581. "Second, a court evaluating a defendant's § 1404(a) motion to transfer based on a forum-selection clause should not consider arguments about the parties' private interests." <u>Id.</u> at 582 ("A court accordingly must deem the private-interest factors to weigh entirely in favor of the preselected forum."). "Third, when a party bound by a forum-selection clause flouts its contractual obligation and files suit in a different forum, a § 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules–a factor that in some circumstances may affect public-interest considerations." <u>Id.</u>

In this case, the Agreement provides that "[a]ny legal action or proceeding arising hereunder will be brought exclusively in the federal or state courts applicable to Travis County, Texas, and the parties hereby consent to personal jurisdiction and venue therein." (Dkt. No. 8-3, Ingle Decl., Ex A, Agreement (under seal).)

Plaintiff does not dispute the validity of the forum selection clause but argues that the clause must be narrowly construed and only applies to disputes relating to the interpretation and performance of a contract. According to Plaintiff, only the breach of contract and breach of the covenant of good faith and fair dealing claims arise out of the interpretation or performance of the Agreement, while the remaining claims do not. Defendant reply that all causes of action, except the misappropriation of trade secret cause of action, arise out of an interpretation of the Agreement. However, the claim of misappropriation of trade secret fails to allege facts to plausibly state a claim.

"The scope of the claims governed by a forum selection clause depends [upon] the language used in the clause." LaCross v. Knight Transp., Inc., 95 F. Supp. 3d 1199, 1207 (C.D. Cal. 2015) (quoting Ronlake v. US-Reports, Inc., No. 11cv2009 LJO MJS, 2012 WL 393614, at *3-4 (E.D. Cal. Feb. 6, 2012)). The Ninth Circuit has found that provisions using the phrases "arising under," "arising out of," and "arising hereunder" should be narrowly construed to cover only those disputes "relating to the interpretation and performance of the contract itself." Id. (citing Cape Flattery Ltd. v. Titan Mar., LLC, 647 F.3d 914, 922-924 (9th Cir. 2011) (addressing an arbitration provision)). Similarly, tort claims may be subject to a forum selection clause if resolution of the claim relates to interpretation of the contract. Manetti-Farrow, Inc. v. Gucci America Inc., 858 F.2d 509, 514 (9th Cir. 1988) (tort claims were subject to the forum selection clause). Whether tort claims are subject to a forum selection clause "depends on whether resolution of the claims relates to interpretation of the contract." In re Orange, S.A., 818 F.3d 956, 962 (9th Cir. 2016) (quoting Manetti, 858 F.2d at 514).

To determine whether the forum selection clause applies to the claims in the instant complaint, the Court must determine whether the causes of action depends on an interpretation of the contract. The parties do not dispute that the breach of contract and breach of the covenant of good faith and fair dealing are subject to the forum selection clause.

Next, the third and fourth causes of action for fraud and negligent misrepresentation concern the false misrepresentation that Zebra did not use incentivized leads which was made in order to induce UE into executing the Agreement. (Dkt. No. 1, Compl. ¶¶ 35, 41.)  The misrepresentation was repeated after the parties entered into the Agreement and after UE raised questions about the quality of its leads. (Id. ¶¶ 33-34, 39-40.)  Plaintiff argues that if UE is successful on its claims for fraud and misrepresentation, the Agreement would be void.  In reply, Defendant argues that fraud claims fall within the scope of the forum selection clause since UE is not asserting that the forum selection clause was the product of fraud or coercion.

"For a party to escape a forum selection clause on the grounds of fraud, it must show that 'the inclusion of that clause in the contract was the product of fraud or coercion.'"  Richards v. Lloyd's of London, 135 F.3d 1289, 1297 (9th Cir. 1998) (quoting Scherk v. Alberto–Culver Co., 417 U.S. 506, 518 (1974)); see also Storm v. Witt Biomedical Corp., 95cv3718, 1996 WL 53624, at *4 (N.D. Cal. Jan. 23, 1996) (fraud claim was subject to forum selection clause because fraud claim was not specific to forum selection clause but alleged fraud as to signing of the contract as a whole). In this case, the complaint alleges fraud and negligent misrepresentation with intent to induce UE to enter into the Agreement as a whole, and does not allege fraud or misrepresentation as to the specific forum selection clause.  Therefore, the causes of action of fraud and negligent misrepresentation concerning whether Zebra used incentivized leads rely on the interpretation of the contract and is subject to the forum selection clause.

Next, the fifth cause of action for violation of the California Business & Professions Code section 17200 *et seq.* is premised on Zebra's alleged act of providing UE with thousands of incentivized leads which UE alleges constitutes unfair competition and resolution of this cause of action requires interpretation of the Agreement to determine whether incentivized leads constituted invalid leads. (Id. ¶¶ 44, 45.) Similarly, the declaratory relief seeks a determination of the parties' respective

1    rights under the Agreement and is subject to the forum selection clause.  (Id. ¶ 60.)

2    Lastly, Plaintiff argues that the misappropriation of trade secrets concerns the

3    employment of McDowell which does not relate to the Agreement.  Defendant replies

4    that the allegations for misappropriation of trade secrets fail to provide facts to

5    plausibly state a claim for relief.  The Court agrees with Defendant.  The Complaint

6    alleges the following fact: "UE is informed and believes that Insurance Zebra has

7    obtained UE's trade secrets by improper means such as through apparent theft and/or

8    in breach of Ms. McDowell's obligations under the confidentiality agreements she

9    entered into with UE."  (Dkt. No. 1, Compl. ¶ 52.)  No facts are alleged to create a

10   plausible inference that Zebra obtained trade secrets and improperly used it.

11   Accordingly, the misappropriation of trade secrets fails to state a claim and the Court

12   declines to consider it for purposes of determining whether it falls within the scope of

13   the forum selection clause.[3]

14   Even if the forum selection clause applies, Plaintiff next contends that Defendant

15   cannot satisfy its burden to show that the private interests factors weigh in its favor.

16   However, because a valid forum selection clause was agreed to by the parties, the Court

17   does not consider private factors.  See Atlantic Marine, 134 S. Ct. at 582 ("a court

18   evaluating a defendant's § 1404(a) motion to transfer based on a forum-selection clause

19   should not consider arguments about the parties' private interests.").

20   When a valid forum selection clause exists, the Court only considers the public

21   interest factors.  The public interest factors to be considered are: "(1) the local interest

22   in the lawsuit, (2) the court's familiarity with the governing law, (3) the burden on local

23   courts and juries, (4) congestion in the court, and (5) the costs of resolving a dispute

24

25         [3]Defendant also presents facts to demonstrate that UE knew McDowell would
     be working with Zebra and did not object; moreover, when McDowell was working at
26   Zebra, she was included in correspondence between UE and Zebra regarding the
     unpaid invoices so she has extensive personal knowledge about the disputes in this
27   case.  However, the Court declines to consider facts outside the complaint to determine
     whether misappropriation of trade secrets states a claim for relief, and the fact
28   McDowell has personal knowledge as to issues in this case does not address whether
     the misappropriation of trade secrets claim falls within the scope of the forum selection
     clause.

1  unrelated to a particular forum." <u>Boston Telecomms. Grp., Inc. v. Wood</u>, 588 F.3d

2  1201, 1211 (quoting <u>Tuazon v. R.J. Reynolds Tobacco Co.</u>, 433 F.3d 1163, 1181 (9th

3  Cir. 2006)).  The public interest factors must so clearly favor litigation in California

4  that they constitute "extraordinary circumstances." <u>Atlantic Marine</u>, 134 S. Ct. at 581.

5       Defendant argues that the Austin Division in the Western District of Texas is not

6  overly congested and this case will proceed efficiently there.  In fact, there is currently

7  a case pending in that district.  Next, it argues this Court and California jurors should

8  not devote resources and time to an action based on forum shopping and

9  gamesmanship.  Next, UE cannot show any exceptional or unusual local interests as

10  Texas has a superior interest in ensuring consistent application of Texas law and

11  protecting the bargained-for rights of its residents.  Finally, since the parties agreed that

12  Texas law applies to the Agreement, a court in Texas is better suited to apply its own

13  laws.

14       In response, without providing any legal authority, Plaintiff summarily argues

15  that the public interest factors weigh in its favor since California has a vested interest

16  in applying its unfair competition law here since Texas does not have a similar law.

17  Moreover, San Diego residents have a greater interest in adjudicating issues of trade

18  secret information belonging to a San Diego company by one of its former employees

19  who still lives in San Diego.

20       The two public interest factors disputed by Plaintiff do not demonstrate any

21  exceptional circumstances that would favor litigating this case in California.  District

22  courts in the Ninth Circuit have rejected "policy arguments unrelated to venue

23  whenever there was no foreclosure of remedy in the transferee forum." <u>Rowen v.

24  Soundview Comm'ns, Inc.</u>, No. 14cv5530-WHO, 2015 WL 899294, at *4 (N.D. Cal.

25  Mar. 2, 2016) (citing <u>E. Bay Women's Health, Inc. v. gloStream, Inc.</u>, No. C 14–00712

26  WHA, 2014 WL 1618382, at *3 (N.D. Cal. April 21, 2014) (rejecting consideration of

27  California's public policy against deceptive business practices under the Unfair

28  Competition Act because "the transferee court may decide to apply the substantive law

1  sought by plaintiffs" and plaintiffs "failed to identify a fundamental policy underlying

2  California's Unfair Competition Act that relates to venue."). Similarly, in this case,

3  Plaintiff has failed to demonstrate that it will be foreclosed of any remedy if the case

4  proceeds in the District Court for the Western District of Texas. In addition, the

5  misappropriation of trade secret does not plausibly state a claim and cannot support

6  Plaintiff's argument.

7      Here, a valid forum selection clause exists requiring adjudication of any disputes

8  to be resolved in a Texas court. There is currently pending litigation in the District

9  Court for the Western District of Texas concerning the same facts and allegations

10  related to the Agreement as in this case. Plaintiff asserts that its filing of the

11  counterclaim in the Texas Action should not be construed as a judicial admission that

12  Zebra's motion to dismiss is meritorious. (Dkt. No. 15, at 3 n.1.) However, the Court

13  notes that UE has not moved to transfer the case to this district.[4] Based on the analysis

14  above, the Court GRANTS Defendant's motion to dismiss based on the forum selection

15  clause.

16                                  **Conclusion**

17      Based on the above, the Court GRANTS Defendant's motion to dismiss. The

18  hearing set for December 2, 2016 shall be **vacated.**

19      IT IS SO ORDERED.

20

21  DATED:  November 29, 2016

22

23                                  HON. GONZALO P. CURIEL
                                    United States District Judge

24

25

26

27      [4]It also appears that the parties intended to file a joint motion to dismiss this case
    and to allow Plaintiff to re-file its claims as counterclaims in the Texas Action but due
28  to counsels' disagreements, the dismissal was not filed. (Dkt. No. 16-1, Ingle Decl.,
    Exs. B, C, E.)

[16CV2215-GPC(NLS)]